UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARYLAND CASUALTY COMPANY, and NORTHERN INSURANCE COMPANY OF NEW YORK,<br><br>                                   Plaintiffs,<br><br>          v.<br><br>AMERICAN SAFETY INDEMNITY COMPANY, licensed to do business in the State of Nevada,<br><br>                                   Defendant. | Case No. 2:10-cv-02001-MMD-PAL<br><br>ORDER<br><br>(Plf.'s Motion for Partial Summary Judgment re American Safety Indemnity Company's Duty to Defend – dkt. no.  24) |

I.      **SUMMARY**

        Before the Court is Plaintiffs Maryland Casualty Company and Northern Insurance Company of New York's Motion for Partial Summary Judgment.  (Dkt. no. 24.)  Plaintiffs seek equitable contribution from Defendant American Safety Indemnity Company for defense and indemnification costs paid to Laird Whipple Concrete, mutually insured by Plaintiffs and Defendant.  This Motion for Partial Summary Judgment seeks to resolve the dispute only as to Defendant's duty to defend.  For the reasons discussed below, the Motion is granted.

## II.    BACKGROUND

This is an equitable contribution action arising out of Defendant American Safety Indemnity Company's ("Defendant") denial of coverage under a commercial general liability ("CGL") insurance policy. The facts are generally undisputed.  Defendant denied coverage for defense fees and indemnity payments to its insured, Laird Whipple Concrete ("Laird"), arising from two construction default lawsuits.  Laird was a subcontractor providing concrete and foundation work for two projects completed in 1994 and 1995 respectively.  (Dkt. no. 24-1, 27.)   The developers of both those properties were later sued due to a variety of construction defects, including foundation and concrete defects.  (Dkt. no. 24-8, Ex. 1, 7.) Although the respective complaints do not specifically allege when the damage occurred, the suits were brought in 2002 and 2006 respectively.   (*Id.*)   In both cases, the developers filed third party complaints against Laird (the "Underlying Actions")[1] and Laird ultimately settled the claims.  (Dkt. no. 24-8, Ex. 2, 8.)

From August 1, 1993, to August 1, 2001, Laird held a series of CGL insurance policies with Plaintiffs Maryland Casualty Company and Northern Insurance Company of New York (collectively "Plaintiffs")[2] insuring Laird against civil liability and providing for payment of defense costs. (Dkt. no. 24-18 – 24-42, Ex. 24-31.)  From August 1, 2001, to August 1, 2007, Laird held similar policies with Defendant. (Dkt. no. 24-11 – 24-16, Ex.

---

[1]Included in Plaintiffs' Motion was an unopposed request for judicial notice of certain court documents related to the original lawsuits and Underlying Actions.  The Court may take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006). Because the existence and content of these court documents is necessary in determining the issues in this case, Plaintiffs request for judicial notice is granted.

[2]It actually appears that only Northern Insurance Company of New York was a party to the insurance contract and the presence of Maryland Casualty, the parent corporation of Northern, is somewhat confusing.  Even more confusing, however, is the fact that both Defendant's and Plaintiffs' briefings refer to "Zurich" as Laird's insurer. According to Plaintiffs' certificate of interested parties, "Zurich" appears to be the parent corporation of Maryland Casualty.  The Court's confusion on this matter notwithstanding, Defendant does not argue that either Northern or Maryland Casualty is not a real party in interest. Thus, for the sake of simplicity, the Court will refer simply to "Plaintiffs."

15-19.)  Upon notification of the Underlying Actions, Laird tendered the defense to both Plaintiffs and Defendant as the Underlying Actions potentially spanned both sets of policies.  (Dkt. No. 24-1.)  Plaintiffs accepted tender of the defense and ultimately paid the defense and settlement costs.  (*Id.*)  Defendant, however, declined tender, asserting that the Underlying Actions were excepted from coverage by various provisions within Defendant's policies.  (Dkt. No. 24-17, Ex. 21-22.)

After the Underlying Actions had both settled, Plaintiffs filed the present lawsuit against Defendant seeking equitable contribution for a portion of the defense and indemnity costs, which Plaintiffs paid to Laird.  Plaintiffs alleged that Defendant's denial of coverage on the Underlying Actions was wrongful and Plaintiffs were therefore entitled to the amount of defense and indemnity costs that Defendant should have paid.  By the instant Motion, Plaintiffs seek to establish that Defendant had a duty to defend Laird and is consequently liable to Plaintiffs for an apportionment of defense costs.  Defendant opposes the Motion, arguing that the allegations in the Underlying Actions were not within the scope of its policies.

## III.    DISCUSSION

### A.    Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v. City of*

1    *Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  In evaluating a summary judgment motion, a

2    court views all facts and draws all inferences in the light most favorable to the

3    nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103

4    (9th Cir. 1986).

5        The moving party bears the burden of showing that there are no genuine issues

6    of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

7    order to carry its burden of production, the moving party must either produce evidence

8    negating an essential element of the nonmoving party's claim or defense or show that

9    the nonmoving party does not have enough evidence of an essential element to carry its

10   ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

11   F.3d 1099, 1102 (9th Cir. 2000).    Once the moving party satisfies Rule 56's

12   requirements, the burden shifts to the party resisting the motion to "set forth specific

13   facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256; *Celotex*

14   *Corp.*, 477 U.S. at 325.  The nonmoving party "may not rely on denials in the pleadings

15   but must produce specific evidence, through affidavits or admissible discovery material,

16   to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th

17   Cir. 1991), and "must do more than simply show that there is some metaphysical doubt

18   as to the material facts," *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002)

19   (internal citations omitted).  "The mere existence of a scintilla of evidence in support of

20   the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

21       **B.    Discussion**

22       Plaintiffs allege that Defendant breached its contractual obligations to Laird by

23   failing to defend Laird in the Underlying Actions.  Under Nevada law, "[a]n insurer . . .

24   bears a duty to defend its insured whenever it ascertains facts which give rise to a

25   potential for coverage under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d

26   1153, 1158 (Nev. 2004) (*quoting Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)).

27   "If there is any doubt about whether the duty to defend arises, this doubt must be

28   resolved in favor of the insured." *Id.* (*citing Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*,

4

838 F.2d 346, 350 (9th Cir. 1988).  "Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy." *Id.* (*citing Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1212 (9th Cir. 1990)). Thus, an insurer may only deny coverage when, based on the facts pled in the complaint, there is no potential for arguable or possible coverage under the policy. *Id.*

An insurance policy "is enforced according to its terms to effectuate the parties' intent," *Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991), and "is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense," *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993) (*citing Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382 (Nev. 1984)).  Any limitation of coverage in the policy must "clearly and distinctly communicate[ ] to the insured the nature of the limitation." *Reno's Executive Air*, 382 P.2d at 1382. Where a limitation lacks clarity, "ambiguities are to be resolved in favor of the insured." *Farmers Ins. Exchange v. Neal*, 64 P.3d 472, 473 (Nev. 2003) (internal citations omitted).

Defendant contends that three provisions in the policy exclude the Underlying Actions from coverage. First, Defendant argues that the amended definition of "Occurrence" employed in its policy only contemplates coverage for scenarios where the property damage and the negligent act resulting in the property damage occur within the policy period. Defendant further argues that the damage alleged in the Underlying Actions necessarily occurred prior to the inception of its policies.  Second, Defendant argues that even if there was coverage under the policy, Laird did not qualify for coverage because the Self-Insured Retention ("SIR") was not paid, a condition precedent to coverage.  Finally, Defendant argues that even if there was coverage and the SIR was inapplicable, Laird did not qualify for coverage because the Other Insurance Amended Endorsement Provision (the "Other Insurance Provision") of the policy required Laird to exhaust coverage from all other insurers before qualifying for coverage.  The Court will address each argument in turn.

### 1.    Occurrence

Defendant argues that the actions alleged in the Underlying Actions cannot be "occurrences" under its policy because Laird's negligent acts, which resulted in the damaged foundations, occurred before the policy period.  The relevant language of the policy states:

> This insurance applies to . . . "property damage" only if:
> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) The . . . "property damage" occurs during the policy period.

(Dkt. no. 24-11, Exh. 15). A 1999 endorsement defines "occurrence" for the relevant time periods as:

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage" . . . which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance."

(*Id.*)

Under Nevada law, the timing of an "occurrence" in CGL insurance policies has generally been construed as the time of the property's physical alteration, not the insured's negligence.  *See, e.g., United Nat'l Ins. Co.*, 99 P.3d at 1159.  Defendant, however, points out that this holding is derived from interpretation of a policy in which "occurrence" was defined as "an accident including continuous or repeated exposure to conditions, which results in . . . property damage."[3]  In contrast, Defendant's policy defines "occurrence" slightly differently.  Defendant argues that replacing "which results in . . . property damage," with "that happens during the term of this insurance," necessitates the finding that "occurrence," as used in Defendant's policy, can only mean a negligent act of the insured that takes place during the policy period. Under this

---

[3]Although Defendant relies on California case law, this definition is the definition at issue in *United Nat'l*. 99 P.3d at 1157.

1   definition, the allegations in the Underlying Actions cannot constitute "occurrences"

2   because Laird's negligent act would have taken place at the latest at completion of the

3   foundation and concrete work in 1994 and 1995 respectively, prior to the policy period.

4   Consequently, the property damage was not caused by an "occurrence" and does not

5   qualify for coverage.

6        However, to accept Defendant's construction of "occurrence," the Court must

7   accept three arguments.  First, Defendant's amended definition separates "occurrence"

8   and "property damage" making an "occurrence" a distinct event, independent of

9   "property damage," such that the *United Nat'l* interpretation is inapplicable.  Second, as

10   an event independent of property damage, an "occurrence" can only refer to the

11   negligent act of the insured which ultimately results in property damage.  Finally, both

12   the "occurrence" and the "property damage" must take place during the policy period.

13        The Court though, cannot accept these arguments for three main reasons. First,

14   belying Defendant's separation argument is the fact that "property damage" is still

15   present in the definition of "occurrence."  The second sentence of the "occurrence"

16   definition, which refines the definition by describing what an "occurrence" is not,

17   references "'[p]roperty damage' which commenced prior to the effective date."  This

18   utilization of "property damage" in the inverse definition, lends itself to the interpretation

19   that "property damage" *within* the policy period is, in fact, the trigger that the parties

20   intended.  Thus, "occurrence" and "property damage," as used in Defendant's policy, are

21   not as clearly distinct as Defendant claims them to be and "occurrence" is reasonably

22   susceptible to the *United Nat'l* interpretation.

23        Second, the very fact that Defendant's construction of "occurrence" relies on the

24   acceptance of three underlying arguments suggests that the plain language does not

25   clearly and distinctly communicate the nature of the limitation.  Had the parties intended

26   to limit coverage to instances where the negligent act of the insured and the resulting

27   property damage occurred in the same policy period, it seems the definition of

28   "occurrence" would read, "the negligent act of the insured occurring within the policy

1   period." By its plain meaning, the policy's *actual* definition, "accident, including

2   continuous or repeated exposure to substantially the same general harmful conditions

3   that happens during the term of this insurance," indicates a much broader scope than

4   solely the negligent acts of an insured.

5       Finally, the Court agrees with the reasoning in *Pennsylvania General Ins. Co. v.*

6   *Am. Safety Indem. Co.*, 111 Cal. Rptr. 3d 403 (Cal. Ct. App. 2010) in which the California

7   Court of Appeals interpreted the exact language at issue in this case.[4]   In *Pennsylvania*

8   *General*, the California Court of Appeals found the amended definition of "occurrence"

9   was susceptible to the interpretation that "the resulting damage, not the [negligent act of

10  the insured], is still a defining characteristic of the occurrence that must take place during

11  the policy period to create coverage." *Id.* at 411.   In doing so, the California Court of

12  Appeals extensively noted several ambiguities and inconsistencies resulting from

13  Defendant's averred construction.   *Id.* at 412-18.   Although not bound by the law of a

14  foreign jurisdiction, the Court finds the reasoning of *Pennsylvania General* persuasive

15  and applicable to this case.

16      Consequently, the Court finds that the amended definition of "occurrence" is

17  reasonably susceptible to the interpretation that physical alteration of the property is the

18  critical moment, not the negligent act of an insured.   Consequently, the term is

19  ambiguous and does not clearly and distinctly communicate to the insured the nature of

20  the limitation.   Because ambiguities must be resolved in favor of the insured, the Court

21  must conclude that there was a possibility of coverage for the Underlying Actions under

22  Defendant's policy.

23

24

25

26      [4]In *Pennsylvania General*, the California Court of Appeals specifically noted the
    holding in *PMA Capital Ins. Co. v. Am. Safety Indem. Co.*, 695 F. Supp. 2d 1124, 1127
27  (E.D. Cal. 2010), a case on which Defendant extensively relies in its argument that
    "occurrence" necessarily means the negligence of the insured, and dismissed it as
28  factually dissimilar and unpersuasively reasoned. *Pennsylvania General*, 111 Cal. Rptr.
    3d at 414 n. 12.

1    As an alternative argument, Defendant contends that even if occurrence is not
2   interpreted to mean the negligent act of the insured, summary judgment should still be
3   denied because (1) the property damage still occurred prior to the policy period, and is
4   thus exempted from coverage by the "deemer provision" (the second sentence of the
5   Amended Definition of Occurrence) and the "prior occurrence" provision, and (2)
6   Plaintiffs failed to show that the owners in the Underlying Actions asserted any property
7   damage caused by Laird's work.   Defendant, however, conflates the standard for the
8   duty to defend as opposed to the duty to indemnify and these arguments also fail.

9    As noted above, for the duty to defend to attach to the insurer, there need only be
10  a *possibility* of coverage.  Plaintiffs have demonstrated that the Underlying Actions were
11  brought during the time at which Defendant was Laird's insurer. It is possible, that the
12  damage to both respective properties occurred immediately preceding the respective
13  lawsuits. Consequently, Plaintiffs have demonstrated a possibility of coverage under
14  Defendant's policy.   Thus, the burden shifts to Defendant to set forth specific facts
15  showing that there is an issue for trial.

16   Under the Nevada standard for duty to defend, Defendant would need to set forth
17  specific facts either indicating that coverage was impossible, or tending to establish that
18  the property damage occurred outside the policy period.  Here, Defendant has presented
19  no evidence to support its position that the property damage necessarily happened prior
20  to the policy period.  Defendant simply argues that the relevant time for determining the
21  occurrence should be at the time the construction was completed.[5] However, this
22  argument is unsupported by the law in Nevada.  Therefore, Defendant has not raised a
23  question of material fact as to the possibility of coverage that requires the denial of
24  partial summary judgment.

25

26    [5]The Court does agree with Defendant's claim that the facts here are somewhat
    similar to Defendant's cited decision of *U.S. Fidelity & Guaranty Co. v. Nevada Cement*
27  *Co.*, 561 P.2d 1335 (Nev. 1977).  Nonetheless, the holding of *U.S. Fidelity* is actually
    that the "compensable injury to or destruction of tangible property occur[s] when [the
28  defect] destroys the structural integrity of a . . . building," and the time of completion of
    construction is therefore immaterial.  *Id.* at 1337.

1      Additionally, although the original suits giving rise to the Underlying Actions did

2 not specifically name Laird as a defendant, both complaints alleged defects in the

3 foundations and concrete work.  Laird was then specifically implicated through the Third-

4 party complaints brought by the property developers.  This connection is sufficient to

5 show allegations in the complaint would give rise to the possibility of coverage and

6 potential liability for property damage to which the policy would apply.  Thus, the duty to

7 defend is implicated.

8             **2.    Self-Insured Retention**

9       Having determined that the terms of the policy would provide coverage, the Court

10 turns now to whether or not Defendant's policy is applicable.  Defendant argues that

11 even if there was the potential for coverage under the policy, Laird did not qualify for

12 coverage because conditions precedent were not met.

13       The first of these claimed failed conditions precedent is that because Laird failed

14 to pay the SIR, the policy was never implicated in the Underlying actions. The SIR

15 provision of the policy states:

16         As a condition precedent to our obligations to provide or
continue to provide indemnity, coverage or defense
17         hereunder, the insured, upon receipt of notice of any "suit",
incident or "occurrence" that may give rise to a "suit", and at
18         our request, shall pay over and deposit with us all or any part
of the self-insured retention amount as specified in the
19         policy, requested by us, to be applied by us as payment
toward any damages . . . incurred in the handling or
20         settlement of any such incident, "occurrence" or "suit".

21 (Dkt. No. 24-11, Exh. 15.)  Defendant argues that because Laird never paid the SIR, its

22 duty to defend never arose.  Further, Defendant argues that even though defense costs

23 in the Underlying Actions exceeded the SIR limit, those costs were paid for by other

24 insurers, and the policy specifically states the SIR must be paid by the insurer.

25 ///

26 ///

27 ///

28 ///

1       This argument strikes the Court as disingenuous.[6]  It seems clear that under the
2   plain language of the policy, "the insured, upon receipt of notice of any 'suit' . . . *and at*
3   *our request*, shall pay," (emphasis added) requires that Defendant request payment of
4   the SIR.  Indeed, this construction comports with common sense as the payment of the
5   SIR is deferred until the insurance company acknowledges coverage and affirms it will
6   provide a defense.  Defendant's construction on the other hand, would either require an
7   insured to pay the SIR simultaneously with tender of the defense and seek a refund of
8   that amount if coverage was denied, or pay the SIR after coverage was denied in order
9   to preserve any challenge.  Such bizarre results are not supported by the plain language
10   of the policy.

11       Here, the reason that Laird failed to pay the SIR was that Defendant had already
12   denied coverage on the Underlying Actions. Defendant has presented no evidence, or
13   even argued, that Laird was somehow unable to pay, or unwilling to pay had Defendant
14   accepted the tender of defense and requested the SIR amount. Further, Defendant's
15   right to the SIR payment extinguished when they denied coverage under the policy.  The
16   Court thus rejects the argument that the non-payment of the SIR was a failed condition
17   precedent under these facts.

18                 **3.**    **Other Insurance Provision**

19       The next failed condition precedent that Defendant argues is the Other Insurance
20   Provision of Defendant's policy.  This provision provides that when the insured has other
21   valid insurance, Defendant's policy is excess over any coverage provided by the other
22   insurance.   Plaintiffs' policy also has an "other insurance" provision, but theirs is more
23   lenient — only limiting coverage when the insured has another *primary* insurance policy.
24   Under Nevada law, an "other insurance" clause is void when it conflicts with a similar
25   clause contained in another applicable insurance policy.  *Travelers Ins. Co. v. Lopez*,

26

27         [6]The Court is aware that Defendant has successfully used the argument at least
    once before.  *See Evanston Ins. Co. v. Am.Safety Indem. Co.*, 768 F. Supp. 2d 1004,
28   1013-14 (N.D. Cal. 2011).

1   567 P.2d 471, 474 (Nev. 1977).  Despite this, Defendant argues that *Travelers* does not

2   void its Other Insurance Provision because Plaintiffs' "other insurance" provision is not

3   "mutually repugnant."  In other words, Plaintiffs' clause would not limit coverage because

4   Defendant's policy is not a primary insurance policy and effect can be given to both

5   terms in both policies while still affording coverage to the insured. Defendant then

6   argues that because Laird could seek coverage on its policy with Plaintiffs, Laird was

7   obligated to exhaust all coverage under Plaintiffs' policy before it sought further

8   indemnification under Defendant's policy.

9       This race-to-the-bottom approach that Defendant advocates is both bad public

10  policy and contrary to Nevada law.  Although the factual scenario, and hence, the

11  discussion in *Travelers* deals with a more direct conflict between two "other insurance"

12  provisions, the reasoning of *Travelers* restricts the ability of an insurer to limit coverage

13  based on the existence of another's policy.  *Id.* ("The better view favors respondent's

14  position that an insured is entitled to payment in full up to the policy limit, with respect to

15  each policy under which coverage is afforded, and that 'other insurance' clauses and

16  similar clauses which purport to limit liability are void."); *see also*, *Yosemite Ins. Co. v.

17  State Farm Mutual Automobile Ins.*, 653 P.2d 149, 150 (Nev. 1982) ("In *Travelers*, we

18  determined that an insurance company could not seek to 'defer or limit its liability' on the

19  basis of availability of other insurance.").  The voidance of "other insurance" provisions

20  was necessary to "avoid arbitrariness in the selection of conflicting clauses," "discourage

21  litigation between insurers," and "provide a basis for uniformity of result."  *Travelers*, 567

22  P.2d at 474.

23      These polices require the voidance of the Other Insurance Provision in this case

24  as well.  Although the selection amongst Defendant's and Plaintiffs' clauses would not

25  necessarily be arbitrary, allowing an insurance company to limit its coverage by writing

26  an "other insurance" provision that is "more repugnant" than another's would only

27  encourage litigation between insurers, produce varied results, and ultimately lead to

28  arbitrary selections between equally repugnant clauses. Additionally, Defendant's

attempt to limit its policy's coverage on the basis of availability of other insurance is precisely that which Nevada law seeks to avoid.[7]  The Court therefore concludes that Defendant's "other insurance" provision is void, and Defendant's argument is rejected.

**IV.    CONCLUSION**

Because the Court concludes that there was a possibility of coverage and neither of the conditions precedent apply, Defendant had a duty to defend.  Accordingly, the Motion for Partial Summary Judgment is granted to establish Defendant's duty to defend. However, the apportionment of defense costs Defendant owes has not yet been proved. Similarly, this Order does not address Defendant's duty to indemnify Laird. These issues remain for resolution on additional motion or at trial.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

DATED THIS 12th day of March 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[7]As Nevada law is clear, Defendant's laundry list of cases in foreign jurisdictions is unpersuasive.